# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REATHA BELLAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT KAHN, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:24-cv-00245-RFB-MDC<br><br>**ORDER** |

　　Before the Court is Plaintiff Reatha Bellas' Motion for a Temporary Restraining Order ("TRO") (ECF No. 3). This matter was removed to this Court on February 5, 2023, from the Eighth Judicial District Court for Clark County, Nevada, the day before a hearing was to be held on Plaintiff's state motion for a preliminary injunction. Bellas filed the TRO motion today, February 6, 2024. The motion is supported by points and authorities, the declaration of Mitchell S. Bisson, Esq., as well as various exhibits.

　　In the Complaint, Bellas alleges the following. Bellas is over 60 years old and, in 2022, she found herself in a difficult financial situation. She sought assistance from Defendant Randy Santa and his employer Defendant North American Financial Corp, who assisted her with applying for a loan from Defendant Kahn. The loan was secured by her personal residence ("the Property"). On July 11, 2022, Bellas entered into a loan for $480,000. However, unknown to Bellas, the agreement stipulated a 9 percent interest rate, interest-only payments for 24-months, a payment of $483,600 due on August 2024, and, in the event of default, an increase in interest rate to 20 percent. Defendants collectively misrepresented and deceived Bellas, including to execute documents stating that the loan was for business purposes not personal purposes and that the residence securing the loan was not her primary residence but a business investment. In

1  October 2023, Defendant Khan filed a Notice of Default and Election to sell against the
2  Property. The foreclosure sale is set to take place on February 8, 2024, and is being conducted by
3  Defendant Nevada Title Deed Services, LLC.

4  The analysis for a temporary restraining order is "substantially identical" to that of a
5  preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d
6  832, 839 n.7 (9th Cir. 2001). To obtain a preliminary injunction, a plaintiff must establish four
7  elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer
8  irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its
9  favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. &
10 Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing
11 Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

12 The Court finds that, based on the facts alleged in the Complaint and the TRO Motion,
13 there are "serious questions going to the merits" raised by the motion. Alliance for The Wild
14 Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011); see also Clear Channel Outdoor,
15 Inc. v. City of L.A., 340 F.3d 810 F.3d 310, 813 (9th Cir. 2023). Plaintiff alleges that Defendants
16 violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-66j, and the Home Ownership
17 and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639.

18 Congress passed the TILA in 1966. As Congress itself states in its congressional findings,
19 the purpose of the Act was to "assure a meaningful disclosure of credit terms so that the
20 consumer will be able to compare more readily the various credit terms available to him and
21 avoid the uninformed use of credit." 15 U.S.C. § 1601. HOEPA was passed with the intent to
22 protect vulnerable consumers from predatory mortgage lending practices. See S. Rep. No. 103-
23 69, at 28 (1993) (referring to "the damage that can be caused by unscrupulous creditors making
24 High Cost Mortgages"). HOEPA, among other things, prohibits or restricts disadvantageous
25 prepayment penalties and balloon payments, as well as other certain acts or practices. 15 U.S.C.
26 § 1639. A party may allege TILA violations if they can show that there were required consumer
27 disclosures that they did not receive. 15 U.S.C § 1640(a). In most cases, there is a one-year
28 statute of limitation for TILA disclosure violations. 15 U.S.C. § 1640(e).

In order to assert a HOEPA violation, a party must show that their loan is covered by HOEPA. 15 U.S.C. § 1602(bb). The HOEPA requires loans to meet three triggers in order to fall under the special protections of the law. 15 U.S.C. § 1602(bb). The first trigger is based on the annual percentage rate of the loan, the second on the total amount of points and fees charged, and the third the timing and amount of prepayment penalties built into the loan term. 15 U.S.C. § 1602(bb). When any of these triggers are met, HOEPA protections are invoked.

Bellas provides sufficient allegations to support "serious questions of the merits" concerning *inter alia* whether the loan at issue is properly covered by HOEPA, whether the loan's $480,000 "balloon payment" qualifies as a prohibited payment structure, whether Defendants alleged failure to consider Plaintiff's ability to pay violates TILA/HOEPA, and whether a 20% default interest rate exceeds limitations on interest rates after default.

The Court further funds that Bellas will suffer irreparable harm if an injunction is not issued due to the loss of her primary residence. A preliminary injunction "may only be granted when the moving party has demonstrated a significant threat of irreparable injury." Simula, Inc v. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999). The harm must be imminent. Caribbean Marine Serv. Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiff alleges a foreclosure sale of the Property is scheduled to occur within 24 hours and the natural result will be Bellas losing her primary residence. It is well-established that the loss of an interest in real property, and a primary residence in particular, is a textbook irreparable injury. See Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1159 (9th Cir. 2011) ("It is well-established that the loss of an interest in real property constitutes an irreparable injury."); Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 661 (9th Cir. 1988) (holding that threatened foreclosure of real property was an "immediate, irreparable injury").

Third, the Court further finds the balance of the equities weighs in Bellas' favor. On one hand, issuance of the TRO would keep Bellas in her home. On the other hand, Defendants stand to have the foreclosure sale postponed. Defendants' interest is further minimized as the tight timeline here is partially of Defendants own making, as a petition for removal could have been filed at an earlier date, allowing resolution before the scheduled foreclosure sale. Taken together,

the Court concludes this factor leans in Bellas' favor.

Fourth, the Court finds that on these facts, the public interest weighs in favor of issuing a TRO. Courts in this circuit have repeatedly recognized that the public's interest lies with keeping homeowners in their homes while they pursue what appears to be valid claims before they are evicted and foreclosed upon.

In sum, the Court finds the balance of the factors weigh toward issuing a TRO. Because the Notice of Removal indicates that service has not been completed on any Defendants, the Court turns to whether it may issue a TRO without written or oral notice to Defendants. A TRO may be issued without notice to the adverse party only if the moving party: (1) provides a sworn statement clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) sets forth the efforts made to notify the opposing party and why notice should not be required. Fed. R. Civ. P. 65(b)(1). TROs issued without notice "are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974)).

The Court finds that Bellas has satisfied both requirements of Rule 65(b)(1). First, Bellas has provided both a verified complaint and the declaration of her counsel attesting to the facts supporting immediate and irreparable injury before the adverse parties could be heard. Second, the declaration of Bellas' counsel attests to attempting to notify as well as meet and confer with opposing counsel on multiple occasions prior to the filing of the instant TRO Motion. Therefore, the Court finds that issuance of a TRO here would preserve the status quo and prevent irreparable hard just so long as necessary to hold a hearing. See McCord, 452 F.3d at 1131.

Finally, federal Rule of Civil Procedure 65(c) provides that "The court may issue a . . . temporary restraining order only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A district court retains discretion "as to the amount of security required,

- 4 -

if any." Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted) (emphasis in original). The Court may dispense with the filing of a bond if "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003). Accordingly, the Court finds that a *de minimis* bond of $100 will be required to be posted by Bellas.

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for a Temporary Restraining Order is **GRANTED**. The Temporary Restraining Order will remain in force for the earlier of 14 days or until the Court issues a ruling on Bellas' pending Motion for a Preliminary Injunction (ECF No. 4). Defendants and their successors, assigns and agents are enjoined from continuing foreclosure proceedings on real property located at 9739 Fox Estate Street, Las Vegas, Nevada 89141 (APN No. 176-25-514-035).

**IT IS FURTHER ORDERED** that Plaintiff may edit or amend her pending Motion for a Preliminary Injunction to add additional points and authorities on or before Thursday, February 8, 2024, at noon, using Notice of Corrected Image/Document event under the Notices category and link to the Motion for a Preliminary Injunction document (ECF No. 4). Opposition to the Motion for a Preliminary Injunction will be due on or before Wednesday, February 14, 2024, at noon. Plaintiff's Reply, if any, will be due on or before Friday, February 16, 2024, at noon.

**IT IS FURTHER ORDERED** that Plaintiff must furnish a bond of $100 with the Clerk of this Court no later than 5:00 p.m. on February 7, 2024, in the form of a bond, certified, cashier's or attorney's check, or cash to secure payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

**IT IS FURTHER ORDERED** that a hearing on Plaintiff's Motion for a Preliminary Injunction will be held on Tuesday, February 20, 2024, at noon in Las Vegas Courtroom 7C before Judge Richard F. Boulware.

///
///
///
///

1   **IT IS FURTHER ORDERED** that Plaintiff is directed to serve immediately serve all Parties by email and pursuant to Rule 4 of the Federal Rules with a copy of the Complaint, Ex Parte Motion for a Temporary Restraining Order, and Motion for Preliminary Injunction, and this Court's Order Granting the Ex Parte Motion for a Temporary Restraining Order.

**DATED:** February 7, 2024.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**